et al. and 13-2083 United States X-Rel Lynette Sun et al. v. Back to the Healthcare Corporation. May it please the Court, David Chisor on behalf of the Plaintiff Appellants in this matter. With the Court's permission, I'd like to reserve two minutes for rebuttal. I'm not going to repeat what has been in the briefing or even summarize it. And instead, what I'd like to do is elaborate on what I think are the core issues in this appeal. And I'd like to start by referring directly to the text of the first-to-file bar. It's all of one sentence. And it says, when a person brings an action under this subsection, no person other than the government may intervene or bring a related action based on the facts underlying the pending action. The question is, what facts are they talking about? What facts in the underlying action are they talking about? And I think in order to answer that question, you need to look to the purposes of the first-to-file bar. Although incidentally, if you want to take the words literally, I think it's crystal clear that the Sun-Hamilton case was not based on the facts contained in the Ven-A-Care case. Sun-Hamilton's case was based on the direct experience that each of them had with Baxter regarding the hemophilia drugs at issue in this case, conversations, documents, meetings that were all referenced in the complaint. And that's what their case is based on. And those facts, circumstances, are nowhere in the Ven-A-Care complaint. So taking it literally, it comes out in Sun-Hamilton's favor. But nevertheless, I'm conceding that you can't look at it literally. This is a one-sentence bar, and you really need to look at the policies underlying that bar. And I think it's critical when you do that, the first thing you need to do is to separate out the policies behind a different bar, the public disclosure bar, and the policies behind the first-to-file bar. Because you'll see that in the case law, courts often treat those two bars as sort of a different side of the same coin. I think that's a mistake because they really address very different issues. Counselor, can I just ask you a question? Sure. I know sometimes we get too hung up on standard of review, but it's usually critical, and I think it's critical here. And specifically, Judge Saris, in her opinion, says this, because Baxter's fraudulent scheme did not differ in any material way between recombinant and advat. The listing of advat in Sun and Hamilton's complaint is not an essential fact, missing from Vennecare's complaint. That seems to be her critical statement. How are we to review it? Are we supposed to ask whether that is a clearly erroneous factual finding, or is there some defect in the legal analysis which we would review de novo? How do we review that? Frankly, Judge, we agree with Judge Saris on that point. We don't believe that this case turns on whether or not the complaint mentioned the word recombinant or it didn't mention the word advat. I think that's a terrible way to decide whether or not a case should proceed, whether the complaint contains this magic word or not. So we agree. We are not making an argument that because Vennecare's complaint didn't contain the word advat, but it did contain the word recombinant, that it's invalid with respect to advat. We think it's invalid with respect to both drugs. And I think the case turns on. But isn't she, given the centrality of this essential facts question, isn't she just saying there that all of the essential facts, in order to allow the government to decide how to proceed, they were already known from the Vennecare complaint. Isn't that what she's saying? Well, she is saying that. And where our disagreement lies is what are the essential facts. So we're not disputing what facts were known and what facts were not known. Okay. The critical issue is what are the essential facts. And in order to, which is basically the same question as I raised, based on the text of the first to file bar, what are, when they talk about the facts underlying the pending action, what are those facts, which other facts are important. And that's why you have to get back to the purpose of the first to file bar. Does that mean that it's a legal question? I do. That we reviewed de novo? Correct. And as Judge Sears pointed out in that opinion as well, there were no disputes. And the legal question is what is an essential fact? That's correct. Because the facts known and not known, there's no dispute about what facts were known and not known. So where I left off was in trying to figure out how to. Is that clear under the case law, that that question of what an essential fact is, is a legal question, or is that a position that you think we should adopt? To be honest, Your Honor, I don't know the answer to that, although I don't see how it couldn't be a legal question. If there's no disagreement about what the actual facts are, whether they're essential, is the issue about whether or not somebody can proceed with a lawsuit, I think that would have to be a legal question. I don't know if the case law really gets, refines it in that way. But I don't see that as an issue. So as I was saying, the courts often confuse or at least meld together the policies behind the public disclosure bar and the first to file bar. And the public disclosure bar is basically, the purpose of that is to stop a plaintiff from copying information that's already in the public domain and not adding anything material of his own. It's essentially devised to deal with the copycat or parasite problem. And it does that effectively. And it does that effectively whether the copycat is a first filed relator, a second filed relator, a third filed relator. So you don't need the first to file bar to address a copycat issue. The first to file bar, the purpose of the first to file bar, is to reward only the first plaintiff to come forward with a lawsuit that can meaningfully assist the government in vindicating its rights under the False Claims Act. And the reason it rewards only the first plaintiff to do that is because you need to incentivize plaintiffs to come forward and report fraud and file lawsuits as quickly as possible. And also you don't want the defendants to have to defend the same lawsuit in two different ways or more than two different ways at the same time. But it is not the purpose of the first to file bar to essentially stop the music or stop the game once the government obtains knowledge of the fraud. Because there is no government knowledge bar. As this court said in Duxbury, the government knowledge bar has been abolished, and instead it was replaced with four other exclusions that were contained in Section 3730E of the statute. Those are the exclusions that deal with the whole government knowledge issue that was amended in the 1986 amendments. The first to file bar is not one of those exclusions. In fact, it's not even in Section 3730E. It's in a different section, and it addresses a different issue. As I mentioned, the first to file bar is essentially to reward and stop the music once a plaintiff has filed a lawsuit that can meaningfully assist the government in vindicating its rights under the False Claims Act. That's when the music stops. And remember, the False Claims Act is not a tipping statute. You don't get a reward for tipping off the government to fraud. You have to file a lawsuit, and that lawsuit has to mean something. And so the question is, what does that lawsuit actually have to contain in order to qualify as first to file? And I think to answer that question, you need to do no more than look at the Venecare complaint itself. Because if you compare Venecare's claims against many of the other defendants, the non-Baxter defendants, you will see that they contain lots of details about specific conduct of the defendants to show that it was their intent to inflate the prices in order to get high reimbursement for their drugs, which made them more attractive in the market. And particularly if you can look at the appendix with those allegations at page 201 to 204, 221 to 223, 396 to 397, and 400 to 401, you will see references to specific conversations that Venecare knew about with the actual defendants to show that they were purposefully inflating their drugs prices. Sarah says that, yes, she acknowledges that your clients provide a lot more detail about how the scheme was carried out, but she says that at least in broad outline, that scheme was set forth in the Venecare complaint, and those additional details were not essential to the ability of the government to vindicate its interests. She certainly did say that, and we disagree, because it's not a matter of just details. There is literally nothing in the Venecare complaint about Baxter's conduct, other than lumping it together with the conduct of a bunch of other defendants. Essentially, and you can compare the allegations that I just mentioned, essentially what Venecare has done is they did uncover a lot of extremely meaningful fraud, and then they saw price spreads from Baxter's drugs as well, and they figured out, let's loop them into the lawsuit as well. Essentially what they're doing is speculating that Baxter was doing the same thing that everybody else was doing. But as this court said in the Heinemann-Guda case, we do not see how an overly broad and speculative complaint lacking essential facts would be sufficient in the first instance to notify the government of a fraudulent scheme under the FCA. And indeed, particularly when you're talking about the scheme that Son Hamilton uncovered, there's nothing in the Venecare complaint, especially since it stopped its allegations with respect to Baxter prior to change in the government's policies, there's nothing in that complaint that would link any price spread to conduct by Baxter. So it is speculation that Baxter was actually committing fraud or knowingly causing the submission of false claims. All that you have is what everybody else was doing. If there's no further questions, I'd like to – Can I just – so this argument goes only to, first of all, not being a bar with respect to Baxter? That's correct. Because if – my client's case is only against Baxter. And once you conclude that our clients were first to file the claims against Baxter, the particular claims on these hemophilia drugs, not the other Baxter drugs, the two hemophilia drugs, once you conclude that our client was first to file those claims, Baxter is then simply stuck with the settlement they had with Venecare that doesn't include those claims because they knew and should have known that only the first-to-file relator can release claims. If there's no other questions, I'll take the rest of my time on rebuttal. Good morning, Your Honor. May it please the Court, Steve Roman on behalf of Baxter Healthcare Corporation. I will divide my time with Mr. Bream, who represents Venecare, and I will address primarily during my portion why this Court should affirm Judge Sarris's judgments below on two independent grounds which dismissed the Son-Hamilton claims. One, they were dismissed because Son-Hamilton were not the first relators to file those claims. Second, independently, they should be dismissed because the settlement in the Venecare case covers the Son-Hamilton claims. No matter how it's framed, Son-Hamilton can only succeed on appeal if this panel were to rewrite the first circuit test, which is essentially the same throughout the country, as to what entitles a first-in-time relator to bar a second-in-time relator's case. And in this circuit, the test turns on the essential facts, and there was a question about the standard of review. Judge Sarris recognized below that when she looked at the essential facts and compared it to the first circuit test, she had to make factual determinations. Now, one of them had to do with the similarities between Recombinate, one of the hemophilia drugs, and Advait, which is a biological equivalent. And as far as I can tell, Son-Hamilton has now given up the ghost on arguing that there is any difference between the drugs. So the fact that the Venecare case mentioned Recombinate but not Advait is of no difference, no distinction, and really doesn't need to be further decided by the court. Judge Sarris did take evidence on that issue, and she did decide facts as to that issue, as well as facts having to do with what was alleged in one case and whether those were essential, what was alleged in another case, and those were essential. And we submit those factual findings are subject to deference and the clearly erroneous rule. If there's one individual in this courthouse. So those are facts that she found to assist her in comparing the two complaints? That was part of it, Your Honor, but in determining. Well, I'm just wondering, are you saying it's a mixed question, or are you saying that it's all factual? I am saying that with respect to what is an essential fact in a case, I think that's a question of fact, which she decided is a question of fact. In fact, holding an evidentiary hearing on those issues, and that's entitled to deference. Now, our view is, even if it's a completely de novo review, we still prevail. But we do believe her factual findings on this essential facts test, both as to Advait Recombinate and as to whether we're talking about the same fraudulent scheme in both cases, those involve questions of fact as to which her decision is entitled to deference. Counsel, isn't it clear from this record that Advait came on to the market subsequent to the filing of the last amended complaint? And in turn, I gather that last amended complaint was the basis for the settlement, which you pose as a bar to the Sun-Hamilton complaint. Is that sequentially, is that correct, as to when Advait came on to the market? Advait did come on to the market after the last of the amendments by VenaCare of its complaint. That is true. So how could it be that, given that fact, how could it be that the VenaCare complaint in its amended form, filed before this drug even came on to the market, how could it provide all of the essential facts necessary for the government to understand a fraudulent pricing scheme with respect to that drug? Because of the very, very, very close similarities between those two drugs. Advait is simply a more purified version of Recombinate, which eliminated all animal and human proteins from the medium. But it is the same drug pharmacology. It is distributed in the same way to the same types of patients. It's administered the same way intravenously. It is exactly the same drug, except for it's a slightly pure version of that drug. And with respect to the first-to-file test, the question, it's not an identical facts test. It's does the first-to-file complaint, as amended, and they were all amended before the Sun-Hamilton case, does it give the government sufficient notice to begin an investigation of the alleged fraudulent scheme? The earlier-filed complaint must provide only the essential facts to give the government sufficient notice to initiate an investigation. And here, we know that the first-in-time, the first-filed relator did provide enough essential facts, not only with respect to Recombinate and Advait, because prior to the Sun-Hamilton complaint in 2005, the government was not only investigating Recombinate, but Advait had come on the market, and it was investigating Advait. And it was running damages analysis for both Recombinate and Advait. So while the test is, are the facts sufficient to launch an investigation, here we know for sure they were, because the investigation did get launched, and that investigation before Sun-Hamilton came on the scene involved not only Recombinate, but Advait. Well, she also does fine, I guess apropos of your point, that the settlement agreement does cover Advait. I mean, there is a designation, I guess, for drugs that refers both to Recombinate and Advait. So I guess to your point, the government was aware of fraudulent pricing issues with respect to Advait as well as Recombinate. At the time, they approved the Medicare settlement. Is that correct? Exactly. They approved. They were given notice of the settlement. The government had an opportunity if it wanted to step in and say, no, Judge Sears, don't sign the settlement. In fact, in another one of the MDL cases dealing with average wholesale price, the government did exactly that. They had a settlement. They said it's too broad, don't sign it, and they objected to it. Just so I understand exactly what the posture of your argument is, you settled, right? Yes. You just would like that settlement not to be disrupted. You don't particularly care. As long as the settlement is not disrupted, whether they can sue or not doesn't really affect your interest. Is that right? No, Your Honor, that's not right. Okay, why not? Because when we settled, when Baxter settled, it did what all of the other AWP defendants did. We want to buy peace. We want to settle and make sure we're not hit again and again with other suits dealing with AWP issues. So Baxter, Baxter didn't even write the settlement. It was presented by VenaCare. It's the same type of settlement that were used in all of the cases. And it applies to not only the specific drugs mentioned in the case, but all other Baxter drugs. And, in fact, while it's general. So on that broader point, and that's a pretty broad point, this settlement needs to be the government's settlement with you? It needs to be a settlement that is approved by the United States. Well, I guess that's a key question, right? If it was the government's settlement with you, then you would have settled all claims that could be brought on behalf of the government, right? Yes. What's the argument for why, when you settle with a party, and the government under the statute has a choice of whether to consent to that settlement, that counts as the same thing as the government having settled with you? Because the settlement language covers claims. The government has an obligation, it's not just a right, but an obligation, to look at a settlement in a key case and say, is that settlement fair to the government? Could the government separately settle with you? Yes. So when the government doesn't separately settle with you, and under the statute it provides it the opportunity to decide whether to consent to a settlement, why should we treat that as the same as the government itself settling with you? Because the government treats it the same way. If the government sees a settlement in a case in which it hasn't intervened, because it has an absolute right to stop that settlement, because the case is brought in the name of the United States, both the Vinokur and the Son Hamilton cases are brought in the name of the United States, the government has a right and an obligation to look at the settlements, even if it hasn't intervened, to see whether it agrees with it. And if it doesn't agree with it, if it thinks the release is too broad, it is obligated to step in and advise the judge. And, in fact, the government did that in another NBL case. It doesn't become party to the litigation directly, does it? No. What stands is the settlement. So why wouldn't we read the scheme to treat those as very different situations? If you'd like to settle with the government and buy the peace you want, nothing precludes you from settling with the government. But in the absence of doing that, why wouldn't we think what you've done is settled with the party you settled with, subject to something that's really not your concern, which is that the statute requires them to get the consent of the government, which is different than the government actually becoming a party and settling. Right. We can't require the government to intervene so that we could settle with them. But the statute is set up so that the government has the right to block a settlement, even if it chooses not to intervene. We can't require them to intervene, but we can reach a settlement. Maybe this is the last version of this. In effect, you have. If we rule that their consent counts as a settlement with the government, you have effectively made them a party to the litigation, haven't you? We have made them a party to the scope of the release of claims against the government. They have to agree to that or not. Intervention, though, brings a whole different raft of responsibilities in terms of the progress of the case and so forth. But the important point for the government is even if they don't intervene, they have to approve the settlement. In this case, they did approve the settlement. They said the $25 million they received was fair compensation for what was being released. And what was being released was all of the claims that VenaCare had brought, which covers all of the claims that's on Hamilton under the first default. Thank you. May it please the Court. I'm Jim Breen. I represent VenaCare of the Florida Keys, and I've been its lead counsel in these Keytown actions since 1994, and before that, actually. And was the lead counsel in the 1995 False Claims Act Keytown case that we're here on today that was filed 10 years before the Hamilton case, and 15 years before we finally got the government to decline and were able to proceed ourselves and get the case resolved. In addition, as the appellant's counsel, Mr. Chisworth, pointed out, we joined a number of defendants. And we did that because VenaCare was an infusion pharmacy, a specialty pharmacy down in the Keys. It had access to all of this industry insider pricing information. Not only did it know when a company was inflating a price and marketing a spread, it also knew from its position in the industry whether it was doing that over time and whether the conduct was continuing from year to year. That's why VenaCare continued to investigate the matter and actually amended a fourth time in this case in December of 2002. After all the conduct, the appellant's counsel pointed out and told the government that Baxter is continuing to engage in the pricing fraud. The same pricing fraud that Judge Sarris has been heading the MDL on since 2001. The same fraudulent theory. The same essential facts. Reporting inflated prices in order to cause Medicare and Medicaid to pay inflated reimbursement and thereby create a kickback or an off incentive for their customers to purchase the product. That was VenaCare's case. And interestingly, I believe Judge Howard was on the Duxbury case, if I remember correctly. And, Your Honor, in that case, the opinion points to the master class complaint that Duxbury's complaint followed. In reality, the first complaint was the VenaCare complaint in 1995, which became public when VenaCare settled with Baxter's competitor, Bayer Laboratories, in 2000. And Congress launched an investigation into VenaCare's cases that in fact led to the changing of the reimbursement mechanism for Medicare in the Medicare Modernization Act. So, VenaCare initiated this entire investigation, this entire series of litigation. It filed companion cases with the states. It helped states that didn't have ketamine laws proceed with their cases. Those states were in our settlements. We've settled numerous cases generating recoveries in excess of $3 billion for the states and the federal government. And Judge Sarris was the judge overseeing all of those federal cases because they got transferred there in the MDL. Most of them were declined cases that we recovered money for the United States on, as with this. So, what I'd like to speak to with the little time I have left, unless the court has any specific questions, is what I think is as important an issue here as first to file, and that is what do you do in a situation where you've got separate relators? VenaCare settled the cause of action that it pled right out of its complaint. Our complaint gave examples of drugs and Recombinate, which is a recombinant, was one of them. But it specifically said that Baxter is doing this for its other drugs, too. And the complaint, at least in the allegations, encompassed all the drugs. When we got to 2011 and reached a settlement with the court-appointed mediator, Professor Green, we were careful to track our complaint and our theory. It's not like Duxbury where we tried to say we had an off-label case or we tried to say we had a Medicaid rebate fraud case. We settled the fraudulent course of conduct theory, the essential facts that we alleged all the way back in 1995 and continue to amend. Counsel, I can certainly understand why Baxter cares about whether Sun and Hamilton can go forward with their claim. They say that they bought their piece with the settlement. You were the plaintiffs, the complainants. So why do you care so much about whether Baxter is able to buy its piece? What's at stake for you, for your client here? For one reason and one reason only, Your Honor. The way this gets teed up procedurally is just odd. I'm sorry? It's odd. That's the only way I can describe it. It's odd procedurally because Judge Sarris, I don't think I've used all my time yet, but I'll be as quick as I can. Judge Sarris was first presented in the Sun-Hamilton case, a case I'm not in, VenaCare is not in, with a motion for summary judgment based upon the VenaCare settlement release. And Baxter filed that right away, like I guess you're supposed to do if you get a settlement or a release that becomes a potential infirmary defense. She ruled on it, and she said, yes, it covers Advait and it covers Recombinate. We were not in that case. At the motion for consideration stage, she asked for VenaCare to weigh in, and we filed a statement of interest. And as to what our position was, because I was a lead counsel in the MDL, she wanted to know what was going on in this settlement. Remember, this is an MDL. And so we did file that statement of interest. Judge Sarris denied the motion for reconsideration, but suggested the Sun-Hamilton file a motion pursuant to Rule 60B-6, directed at my case, to reopen the case and test whatever objections they had. It's that procedure that we objected to below, although in the end she ruled our way. She agreed that first to file had to be determined first, and she ruled our way. So we're on all fours with Baxter's position on first to file. Yes, Your Honor. That's a very helpful summary, but just so I get what our posture is, if we were to reverse Judge Sarris on her summary judgment decision, and the Rule 60 motion was therefore mooted, you then have no stake in whether they're first to file or not. I believe that's correct, Your Honor. I think it might depend upon why the reversal occurs, and I can speak to that. There's two reasons why I think, if I've got them all logically, the court could reverse. One is, and Mr. Chisler briefed this, and candidly, this was the basis for my statement of interest. Let's stop the editorializing because your time's up. So just make the two points. Two points, Your Honor. One, as Mr. Chisler has argued, the court could rule that our settlement explicitly states that VenaCare only settled the false claims, KETAM claims, to the extent it pled them for the United States. And secondly, it only released those claims that it had authority to, that it pled, it had authority to release as a KETAM or later. And third, the settlement specifically provides that it's settling the federal KETAM case, VenaCare's case. So one ground, if it was that ground, I think it's over, as far as VenaCare is concerned. The other ground would be that it, the release covers it, and then the question becomes whether or not Son Hamilton have objections to their right to a hearing. It's, I think, all litigants in this case, including Baxter, and we filed a joint brief with them. We did not join the summary judgment. The rest we did. Everybody agrees that whatever objections Son Hamilton has to a lack of hearing, should the court get to that point, they could have and should have and can raise and appeal and appeal from any order in their case. Got it. Thanks. Thank you very much. Two quick points. The notion that Baxter thought it was buying peace on the Son Hamilton case when it settled the VenaCare case is disingenuous. Number one, when they filed the motion to approve the settlement in the MDL, under the MDL rules you must indicate in that motion to what cases that motion to approve the settlement relates. And they did not include the Son Hamilton case in compliance with that rule. They included only the VenaCare case because they thought they were only affecting the VenaCare case. And it was only VenaCare that provided the release. I agree that the scope of the release is broad, but that's only meaningful based on who's giving that broad release. And the only party that gave the broad release was VenaCare to the extent that they had the authority to. So if they weren't first to file, they had no authority, and Baxter took that risk when they did the settlement. That settlement could be maintained without disturbing the first to file ruling, without interrupting the fact that Son Hamilton were first to file. The second point is that any piece of information can sometimes be good enough to launch a government investigation. In Duxbury's complaint, he certainly articulated, even in that original complaint, the off-label promotion of Procrit at a dosage level that was not approved by the government. But this court noted that that wasn't good enough. So it's more than just some piece of information that might launch an investigation. And Baxter's correct that there was an investigation before Son Hamilton filed its complaint, but it wasn't the result of the allegations that were made by VenaCare against Baxter. In fact, if you look at the damages analysis that Baxter pointed to that the government uncovered, it showed damages for the recombinant and Advait drugs of over $200 million. And they wound up settling for all drugs for $25 million. And that's because it was clear that VenaCare didn't have the goods on Baxter. It's easy to credit VenaCare with everything because they did a fantastic job for the government, bringing a lot of information to light. But that doesn't mean you don't have to look at each defendant, defendant by defendant. And with respect to Baxter, they didn't have the goods on Baxter. It's not clear to me whether you think that we should disregard Heinemann-Guta, which of course we can't, or whether you think this case fits comfortably within it, or whether you think we should refine Heinemann-Guta. Because Judge Saris seemed to think that it bound her. I think the outcome that we've asked for is completely consistent with Heinemann-Guta. As the court said, as I read in my opening statement, a speculative complaint does not put the government on notice. It does not vindicate the government's rights under the FCA. In the Heinemann-Guta case, it was basically two different relators, same types. They were both sales reps. In fact, they conceded that the claims were the same in both cases. Here it's two totally different elements, two totally different degrees of information that were presented. It's much more like Duxbury. Thank you all. Well argued.